UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| K-V PHARMACEUTICAL COMPANY, and THER-RX CORPORATION, | |
| Plaintiffs, | CIVIL ACTION NO. |
| v. | 1:12-CV-2491-CAP |
| DAVID A. COOK, in his official capacity as commissioner of the Georgia Department of Community Health, and JERRY DUBBERLY, M.D., in his official capacity as Division Chief of the Medicaid Division of the Georgia Department of Community Health, | |
| Defendants. | |

**O R D E R**

This action is before the court on the defendants' motion to dismiss [Doc. No. 25] and the plaintiffs' motion for leave to file a surreply [Doc. No. 41]. As an initial matter, the motion for leave to file a surreply [Doc. No. 41] is GRANTED. The surreply filed by the plaintiffs was considered by the court.

### I. Factual and Procedural History

The plaintiffs are the owners of Makena®, the only drug approved by the Food and Drug Administration ("FDA") to reduce the risk of preterm birth in women who are pregnant with a single baby and have had a prior preterm birth. Makena® was added as a "covered" drug by the Georgia Department of Community Health ("DCH") in February 2011. Makena® is considered a "covered outpatient drug" under the Medicaid Act. It is the subject of a Medicaid Drug Rebate Agreement ("MDRA") between Ther-RX and the United States Department of Health & Human Services. DCH is required to cover and pay for "covered outpatient drugs" that are the subjects of an MDRA. 42 U.S.C. §§ 1396r-8(a)(1), (k)(2). The parties agree that DCH is required to cover Makena® as an outpatient drug for its FDA-approved indications.

According to the defendants, DCH does cover Makena®, but the drug is subject to prior authorization. DCH has issued a position statement regarding Makena® [Doc. No. 2-41] in which it indicates that in order to obtain coverage for Makena®, documentation of medical necessity "over CHC" is required. CHC refers to compounded hydroxyprogesterone caproate. Compounding is a process by which a pharmacist combines, mixes, or alters ingredients to create a medication tailored to the needs of an individual

patient. *Thompson v. Western States Medical Center*, 535 U.S. 357, 360–61 (2002). The Food and Drug Administration Modernization Act of 1997 ("FDAMA") exempts "compounded drugs" from the FDA's standard drug approval requirements under the Federal Food, Drug, and Cosmetic Act ("FDCA"), so long as the providers of the compounded drugs abide by several restrictions. *Id.* at 357. The compounded product at issue in this case contains the same active pharmaceutical ingredient as Makena®; however, it is not a manufactured drug for which FDA approval has been obtained. Thus, CHC is not a covered outpatient drug.

The plaintiffs sought a preliminary injunction arguing that DCH's policy of favoring the compounded product over Makena® imposes unreasonable conditions on access to Makena®. In other words, the practical effect of the policy is that a product that is not a covered outpatient drug will be substituted for a covered outpatient drug. The crux of the plaintiffs' argument was that in practical application, DCH's policy results in non-coverage for Makena®.

In response, the defendants argued that Makena® is covered and that the prior authorization requirement is lawful. The defendants offered evidence of four instances in which Makena® was prescribed and paid for by Medicaid. They contend these four instances prove that DCH is covering

3

Makena® as required by law.  Counsel for the defendants conceded, however, that the policy is written in favor of the use of the compounded product.

This court determined that DCH's required default to CHC instead of Makena® is, in essence, non-coverage of the FDA-approved drug.  Therefore, the court issued a preliminary injunction requiring the defendants to cover Makena® [Doc. No. 30].

The defendants have moved to dismiss the complaint against them arguing that the plaintiffs (1) do not have standing to bring this action, and (2) fail to state a claim for relief [Doc. No. 25].

## II.   Motion to Dismiss

### A.   Standing

The defendants contend that the plaintiffs have not suffered injury-in-fact. As a result, the defendants argue, the plaintiffs cannot demonstrate constitutional standing.  The defendants further assert that even if constitutional standing is established here, the constraints of prudential standing prohibit the plaintiffs from going forward with their claims.

#### 1.   Constitutional Standing

Article III standing entails three requirements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or

4

>'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted). "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.' " *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003) (quoting *Lujan*, 504 U.S. at 561).

The primary focus of the defendants' standing argument is that the plaintiffs fail to satisfy the first element of the constitutional standing requirements: injury-in-fact. Rather, the defendants contend, the plaintiffs are asserting the rights of others, specifically pregnant women on Medicaid who are at risk of pre-term birth.

In response, the plaintiffs contend that they are suffering an injury-in-fact: the economic loss stemming from Georgia's policy that allows the state to circumvent its payment obligations under the MDRA. The plaintiffs quote the order granting the preliminary injunction in which this court stated,

"every lost sale of Makena® to Georgia Medicaid patients is a financial blow to the plaintiffs." [Doc. No. 30 at 8].

As this court had already recognized, DCH's policy of preference for the compounded drug rather than the FDA-approved Makena® amounts to non-coverage of Makena®. The resulting economic harm is an injury-in-fact suffered by the plaintiffs.

Additionally, the remaining two prongs of the constitutional standing analysis prong are met here. The injury suffered by the plaintiffs is directly traceable to DCH's policy that prefers the compounded drug over Makena®, and prohibiting implementation of DCH's policy favoring the compounded drug will redress the injury at issue.

Based on the foregoing, the court finds that the plaintiffs have established constitutional standing to seek relief in this action.

### 2. Prudential Standing

Prudential standing requirements are " 'judicially self-imposed limits on the exercise of federal jurisdiction' " that may be modified by Congress. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Among these prudential requirements is that a plaintiff's grievance must "arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in

6

the suit." *Id.* Under this doctrine, a plaintiff will be denied a right of review if its "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

In the motion to dismiss, the defendants argue that the statutory provisions at issue in this case protect pregnant women subject to preterm birth as opposed to a pharmaceutical company seeking to accrue profits. Therefore, the defendants contend, the prudential considerations preclude standing for the plaintiffs here.

The defendants' argument completely ignores the plaintiffs allegations that DCH's policies with respect to Makena® violate the coverage requirements of 42 U.S.C. §§ 1396r-8(a)(1), (k)(2). The plaintiffs entered the MDRA, which requires DCH to cover Makena® as an out-patient drug for its FDA-approved indications.

It is easy for this court to conclude that the plaintiffs' interests, obtaining coverage for Makena®, is within the "zone of interests" protected or regulated by statutory provisions establishing the MDRA. According to the Centers for Medicare & Medicaid Services, the statutes at issue here require drug manufacturers to agree to provide a rebate on drug purchases "***in***

***exchange* for State Medicaid coverage" of the that drug. *See*

http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Benefits/Prescription-Drugs/Medicaid-Drug-Rebate-Program.html

(last visited November 8, 2012) (emphasis added). In other words, State Medicaid coverage of the drug is the incentive for manufacturers to agree to the rebate program.

The court finds that the relief sought by the plaintiffs in this suit is squarely in line with the purposes of the statutes at issue. Accordingly, there are no prudential considerations that will preclude the plaintiffs' right of review in this case.

### B.   Failure to State a Claim for Relief

The defendants contend that the plaintiffs' claims must be dismissed because the Supremacy Clause, which is relied upon by the plaintiffs, does not provide a right of action for violations of the Medicaid Act.

"A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). The plaintiffs have alleged that DCH's prior authorization policy

violates § 1396r-8(a) of the Medicaid Act, which requires DCH to provide access to "covered outpatient drugs." Compl. at 41 [Doc. No. 1].

Apparently, the defendants are arguing that because the plaintiffs are not subject to the policy at issue (as opposed to Medicaid beneficiaries), they have no right to bring suit even if there is a conflict between the policy and the federal statute. *See* Mem. of Law in Supp. of Mot. to Dismiss at 15 n.6 [Doc. No. 25]. This position ignores the benefit conferred upon a drug manufacturer upon entry into a MDRA: coverage of its product as an outpatient drug for its FDA-approved indications. The entire purpose underlying DCH's policy with respect to Makena® is to *avoid* coverage of Makena®. Therefore, the policy at issue is in direct conflict with the federal statutory requirements of coverage. As such, the plaintiffs may challenge the policy pursuant to the Supremacy Clause.

### III. Conclusion

The plaintiffs' motion for leave to file a sureply [Doc. No. 41] is GRANTED. The defendants' motion to dismiss [Doc. No. 25] is DENIED.

SO ORDERED, this 9th day of November, 2012.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge