UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| K-V PHARMACEUTICAL COMPANY, and THER-RX CORPORATION,<br><br>      Plaintiffs,<br><br>   v.<br><br>DAVID A. COOK, in his official capacity as commissioner of the Georgia Department of Community Health, and JERRY DUBBERLY, M.D., in his official capacity as Division Chief of the Medicaid Division of the Georgia Department of Community Health,<br><br>      Defendants. | CIVIL ACTION NO.<br><br>1:12-CV-2491-CAP |

**O R D E R**

This action is before the court on the defendants' motion for summary judgment [Doc. No. 77] and the plaintiffs' corrected motion for summary judgment [Doc. No. 82].

## I. Factual and Procedural History

The plaintiffs are the owners of Makena®, the only drug approved by the Food and Drug Administration ("FDA") to reduce the risk of preterm birth in women who are pregnant with a single baby and have had a prior preterm birth. Makena® was added as a "covered" drug by the Georgia Department of Community Health ("DCH") in February 2011. Makena® is considered a "covered outpatient drug" under the Medicaid Act. It is the subject of a Medicaid Drug Rebate Agreement ("MDRA") between Ther-RX and the United States Department of Health & Human Services. DCH is required to cover and pay for "covered outpatient drugs" that are the subjects of an MDRA. 42 U.S.C. §§ 1396r-8(a)(1), (k)(2). The parties agree that DCH is required to cover Makena® as an outpatient drug for its FDA-approved indications.

According to the defendants, DCH does cover Makena®, but the drug is subject to prior authorization. DCH has issued a position statement regarding Makena® [Doc. No. 2-41] in which it indicates that in order to obtain coverage for Makena®, documentation of medical necessity "over CHC" is required. CHC refers to compounded hydroxyprogesterone caproate. Compounding is a process by which a pharmacist combines, mixes, or alters ingredients to create a medication tailored to the needs of an individual

2

patient. *Thompson v. Western States Medical Center*, 535 U.S. 357, 360–61 (2002). The Food and Drug Administration Modernization Act of 1997 ("FDAMA") exempts "compounded drugs" from the FDA's standard drug approval requirements under the Federal Food, Drug, and Cosmetic Act ("FDCA"), so long as the providers of the compounded drugs abide by several restrictions. *Id.* at 357. The compounded product at issue in this case contains the same active pharmaceutical ingredient as Makena®; however, it is not a manufactured drug for which FDA approval has been obtained. Thus, CHC is not a covered outpatient drug.

The plaintiffs sought a preliminary injunction arguing that DCH's policy of favoring the compounded product over Makena® imposes unreasonable conditions on access to Makena®. In other words, the practical effect of the policy is that a product that is not a covered outpatient drug will be substituted for a covered outpatient drug. The crux of the plaintiffs' argument was that in practical application, DCH's policy results in non-coverage for Makena®.

In response, the defendants argued that Makena® is covered and that the prior authorization requirement is lawful. The defendants offered evidence of four instances in which Makena® was prescribed and paid for by Medicaid. They contend these four instances prove that DCH is covering

Makena® as required by law. Counsel for the defendants conceded, however, that the policy is written in favor of the use of the compounded product.

This court determined that DCH's required default to CHC instead of Makena® is, in essence, non-coverage of the FDA-approved drug. Therefore, the court issued a preliminary injunction requiring the defendants to cover Makena® [Doc. No. 30].

The defendants filed a motion to dismiss arguing that the plaintiffs do not have standing to bring this action and that the complaint fails to state a claim for relief [Doc. No. 25]. The court denied the motion to dismiss [Doc. No. 45]. The parties have now completed discovery and filed cross motions for summary judgment [Doc. Nos. 77 and 82].

## II.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an

absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Anderson*, 477 U.S. at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. When the record as

a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* (citations omitted).

## III.  Analysis

### A. The Plaintiffs' Motion for Summary Judgment

While the plaintiffs' motion for summary judgment is broken down into various issues and arguments, the thrust of the motion is whether DCH's policy of favoring CHC over Makena® violates the Medicaid Act. The material facts are not in dispute here. Instead, what is in dispute is how to articulate the way DCH is dealing with the requirement to pay for a very expensive drug when there is a safe, dramatically cheaper alternative in the form of a compounded drug.

#### *1. Violation of the Medicaid Act*

The law is clear that once a State decides to participate in Medicaid, it must comply with all federal statutory and regulatory requirements. *Martes v. CEO of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1324 (11th Cir. 2012). The requirement at issue here is coverage of the FDA-approved drug Makena®. The parties agree that the defendants are required to cover the drug. The dispute lies in whether the restrictions DCH has placed on the ability of Medicaid recipients to obtain Makena is, in effect, non-coverage. Thus, the plaintiffs argue that to comply with coverage requirements, the defendants

may not condition use of Makena® on the unavailability or inefficacy of the substitute.

In response to the motion for summary judgment, the defendants point to the testimony of Defendant Dubberly, Medicaid Division Chief of DCH, who states that coverage means that the state must have a mechanism by which providers can access the product but that reimbursement may be subject to limitations such as prior approval, medical necessity, or quantity level limitations. Dubberly Dep. at 40-41 [Doc. No. 85-41]. Thus, according to the defendants, DCH is in full compliance with the requirements of Medicaid in that Makena® is a covered drug.

The defendants' argument is unavailing. Conditioning the reimbursement for a drug upon the unavailability or inability to use the non-FDA approved compound is not coverage. To achieve coverage, the defendants must alter their policy to provide that Makena® will be reimbursed when prescribed rather than making it the exception.

The defendants seek to litigate this case in the context of "prior approval." The requirement that "prior approval" must be obtained is not the issue. Rather, the issue is whether the practical application of the prior approval process results in a lack of coverage because the compounded product is favored. Under the undisputed facts of this case, DCH's policy

7

prefers a non-approved compounded product over the FDA-approved Makena®, which amounts to non-coverage. Moreover, this court agrees with the District Court of the Southern District of Florida that the Medicaid Act does not authorize a state to use a prior authorization program to deny coverage for a covered drug. *Edmonds v. Levine*, 417 F.Supp.2d 1323, 1329 (S.D. Fla. 2006). Thus, DCH's current policy of requiring use of CHC over Makena® is a violation of the Medicaid Act.

### 2. DCH is Required to Ensure CMO Compliance

DCH contracts with three Care Management Organizations ("CMOs"): Peach State Health Plan, Wellcare, and Amerigroup Community Care. The CMOs provide services, including prescription drug coverage to Medicaid recipients in Georgia through the Georgia Families program. Pursuant to the terms of the contracts, "DCH will comply with, and will monitor the [CMO's] compliance with all applicable State and federal laws and regulations. Notwithstanding the foregoing, the CMO remains responsible for compliance with all applicable State and federal law regulations." [Doc. No. 81-21 at 43]. Therefore, the plaintiff argues that DCH is required to ensure that its CMOs are properly covering Makena® in the same way that DCH itself is required to do.

In response, DCH argues that the fact that it has a contractual right to take action against a CMO for violation of contract terms does not mean that it has the ability to exercise control over the CMOs' operations and policies. Additionally, DCH points out that the CMOs are not parties to this lawsuit.

DCH is correct in that its responsibility to ensure that the CMOs are complying with the law does not stem from the contract. However, federal regulations require that "[e]ach State must ensure that all services covered under the State plan are available and accessible to enrollees of [CMOs]." C.F.R. § 438.206(a). Additionally, DCH is required to establish sanctions to be imposed if a CMO "[f]ails to substantially provide medically necessary services that the [CMO] is required to provide, under law or under its contract with the State, to an enrollee covered under that contract." C.F.R. § 438.700(a) and (b)(1).

These regulations place the responsibility for compliance of CMOs squarely on the state that contracts with them. Otherwise, a state could avoid its obligations under the Medicaid Act by simply contracting with a CMO.

### B. The Defendants' Motion for Summary Judgment

While the court has determined that the defendants are not complying with the Medicaid Act in that they have created an end-around coverage of

9

Makena®, the defendants make a series of arguments in their own motion for summary judgment as to why the plaintiffs cannot obtain relief in this forum. These arguments are addressed below.

### 1. FDCA

The defendants contend that the plaintiffs' lawsuit is an attempt to enforce the FDCA, a statute that provides no private right of action. Section 337(a) of the FDCA provides "[a]ll such proceedings for the enforcement or to restrain violations of this Act shall be in the name of the United States." 21 U.S.C. § 337. The plaintiffs do not dispute the fact that they cannot bring a cause of action to enforce the FDCA. In fact, they point out that they have brought a separate action in the district court for the District of Columbia seeking to challenge the FDA's lack of enforcement of the Act. *K-V Pharmaceutical Co. v. FDA*, No. 1:12-CV-01105-ABJ (D. D.C. July 5, 2012).

The court has already determined that the plaintiffs have established that the DCH policy preferring CHC over Makena® is a violation of § 1396r-8(a) of the Medicaid Act. The defendants may not simply restate the plaintiff's claim under a different statute and then obtain judgment on the basis that the statute does not allow for a private cause of action.

10

### 2. FDA's Enforcement Discretion

Similar to their first argument in support of their motion for summary judgment, the defendants argue that the plaintiffs' lawsuit is an attempt to usurp the FDA's enforcement discretion. However, as set forth above, this case is about an alleged violation of the Medicaid Act. The enforcement powers of the FDA are not at issue here. The case relied upon by the defendants, *Heckler v. Chaney*, 470 U.S. 821 (1985), is not remotely applicable. In that case, a death row inmate filed suit seeking to compel the FDA to prevent off-label drug use in lethal injections. The claim was rejected because an agency's decision to not take enforcement action is unreviewable in the absence of a stated intent by Congress to "circumscribe agency enforcement discretion." *Id.* at 834. Here, the plaintiffs are seeking a remedy for the alleged violation of § 1396r-8(a) of the Medicaid Act; they are not seeking to compel any action by the FDA in this court.

### 3. Violation of the Medicaid Act

The defendants argue that the plaintiffs have failed to show a violation of the Medicaid Act. However, as set forth above, the court finds, as a matter of law, that DCH's policy of preferring CHC to Makena® is a violation of the Medicaid Act.

### 4. Deference to CMS's Interpretation

The defendants contend that CMS's interpretation of what is required by the Medicaid Act is entitled to deference. The Supreme Court established the standard for judicial review of agency decisions in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The first step in the *Chevron* two-step review is to determine whether Congress has directly and unambiguously spoken to the precise question at issue. *Chevron*, 467 U.S. at 842–43. Under common statutory interpretation principles, a court must look at the "particular statutory language at issue, as well as the language and design of the statute as a whole." *Sullivan v. Everhart*, 494 U.S. 83, 89, (1990) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). Statutory interpretation is within the special competence of the courts. If congressional intent is clear and the agency action is contrary, then that action must be set aside by the judiciary. *Chevron*, 467 U.S. at 843 n.9. If the agency's interpretation reflects a permissible construction of the statute and a reasonable reconciliation of conflicting policies, a reviewing court may not substitute its own judgment, but must defer to the agency interpretation. *Chevron*, 467 U.S. at 842–45,

The interpretation at issue here is DCH's policy, which says that due "to prior success with [CHC] coupled with the narrow indications of

Makena®, the Medicaid Division will require documentation of medical necessity for Makena® over [CHC]." [Doc. No. 1-7].  First, this policy is not the type of interpretation to which *Chevron* deference applies.  The Supreme Court held, "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."  *United States v. Mead Corp.* 533 U.S. 218, 226–27 (2001).  Creating a mechanism that allows DCH to duck its obligation to cover Makena® through the substitution of a compounded product does not amount to law-making.  Therefore, it would be inappropriate for this court to apply *Chevron* deference to the actions taken by DCH with regard to Makena®.

Second, even if this court were to apply *Chevron* deference as urged by the defendants, there is no ambiguity in the statute at issue.  DCH is required to cover Makena®.  DCH admits that it is required to cover Makena®.  The question that has been raised in this lawsuit is whether the prior authorization scheme in which CHC is preferred over Makena® amounts to non-coverage.

The fact that in a handful of instances Makena® has been prescribed by providers and received by Medicaid patients (and paid for by the defendants) does not change the outcome in this matter.  The parties bicker about precisely how many vials of Makena® have been dispensed to Medicaid recipients and how many times DCH has rejected a request for Makena®.  *See* Statements of Material Facts and Responses [Doc. No. 77-2 at ¶ 10, Doc. No. 93 at ¶10, Doc. No. 81 at ¶66, and Doc. No. 91 at ¶66], However, these numbers are irrelevant to the issue at hand.  This is so because the policy conditions reimbursement on a showing that the substitute is unavailable; this policy prevents rather than provides access to Makena®.

### C. Permanent Injunctive Relief

The plaintiffs seek a permanent injunction preventing DCH and its CMO contractors from instituting any prior authorization policy that favors CHC over Makena®.  Additionally, the plaintiffs request that the court enjoin DCH and its CMO contractors from providing reimbursement for CHC unless the physician establishes a specific need for the compounded version over Makena®.

Under the principles of equity, a plaintiff requesting a permanent injunction must satisfy a four-factor test:  (1) that [the plaintiff] has suffered

14

an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Thus, the standard for a permanent injunction is essentially the same as for a preliminary injunction except that the movant must show actual success on the merits instead of a likelihood of success on the merits. *Siegel v. LePore*, 234 F.3d 1163, 1213 (11th Cir. 2000).

### *1. Prior Authorization Policy*

In the first request for injunctive relief, the plaintiffs ask the court to prevent DCH and its CMO contractors from instituting any prior authorization policy that favors CHC over Makena®. The court has already determined that the plaintiff has succeeded on the merits of its claim regarding DCH's prior authorization policy. Also, the court, in its order granting preliminary injunctive relief, found that the use of the prior authorization policy preventing sale of Makena® to Georgia Medicaid patients results in a financial blow to the plaintiff that cannot be recouped through a suit for damages [Doc. No. 30 at 8]; the defendant has pointed to nothing in the record to changes the court's finding on this issue.

A balancing of the equities between the plaintiffs and DCH with respect to use of a policy that violates federal law weighs in favor of the plaintiffs.  While DCH argues that it will suffer increased costs, the court agrees with the Tenth Circuit Court of Appeals  which held that "[b]udgetary constraints cannot excuse noncompliance with federal Medicaid law."  *Amisub (PSL), Inc. v. Colo. Dept. of Social Servs.*, 879 F.2d 789, 800 (10th Cir. 1989).

Finally, the public interest is unquestionably served through enforcement of Medicaid laws in general.  More specifically, the parties agree that it is in the public interest to prevent preterm births.  The FDA has approved Makena® for use in preventing preterm births.  To allow a substitute compounded drug to be used in favor of the approved drug would render the FDA approval process meaningless.  Thus, the public interest is served through an injunction preventing DCH from utilizing a policy that favors CHC over Makena.

Because the plaintiffs have satisfied the four-factor test necessary to obtain permanent injunctive relief as to the prior authorization policy utilized by DCH, it is entitled to a permanent injunction on this issue.  The precise details of the injunction are set forth below.

### *2. Disallowance of Reimbursement for CHC*

In addition to eradication of the prior authorization policy that is in violation of the Medicaid Act, the plaintiff is requesting that the court enjoin DCH from reimbursing physicians for CHC absent a specific need for CHC over Makena®. However, this relief goes beyond what the court has determined is required by the Medicaid Act. There is no legal basis to disallow healthcare providers from prescribing CHC and being reimbursed when they do so.[1] Accordingly, the plaintiff is not entitled to injunctive relief on this issue.

## IV.   Conclusion

The plaintiffs' motion for summary judgment [Doc. No. 82] is GRANTED. The defendants' motion for summary judgment [Doc. No. 77] is DENIED.

The court enters the following permanent injunction:

The defendants shall:

---

[1] The court recognizes that its preliminary injunction included a requirement that DCH cover and pay for CHC only in the event that the treating physician documents that that patient has a specific medical need for a compounded variation over Makena. However, after review of the evidence adduced at summary judgment, the court finds that this requirement is overreaching. Therefore, this relief is not included in the permanent injunction.

(1) refrain from implementing a prior authorization policy that favors CHC over Makena®;

(2) adopt a written policy that ensures Makena® will be reimbursed if prescribed by a healthcare provider for its indicated use;

(3) ensure that its CMOs do not implement a prior authorization policy that favors CHC over Makena®;

(4) publish notice to all healthcare providers that the change to its prior authorization policy regarding Makena® is permanent;

 (5) provide written notice to all health care providers whose prescriptions of Makena since June 1, 2011 have been denied that Makena® is no longer subject to a prior authorization policy that favors CHC.

SO ORDERED, this 7th day of April, 2014.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge